AO-106 (Rev: 06/09)-Application for Search Warrant

**FILED**

# UNITED STATES DISTRICT COURT

NOV 2 9 2023

for the

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

Northern District of Oklahoma

In the Matter of the Search of                              )
*The residence at 1510 East 67th Street, Tulsa, Tulsa*      )     Case No. 23-MJ-652-JFJ
*County, Northern District of Oklahoma*                     )
                                                            )
                                                            )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| **21 U.S.C. § 846** | **Drug Conspiracy** |
| **21 U.S.C. § 841(a)(1)** | **Possession of Controlled Substance with Intent to Distribute** |

The application is based on these facts:

**See Affidavit of SA Alan Frank, DEA, attached hereto**.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Alan Frank*

*Applicant's signature*

Alan Frank, Special Agent, DEA

*Printed name and title*

Subscribed and sworn to by phone.

Date: __11/29/23__

City and state:  __Tulsa, Oklahoma__

*Judge's signature*

Jodi F. Jayne, U.S. Magistrate Judge

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **In the Matter of the Search of**<br>**The residence at 1510 East 67th Street,**<br>**Tulsa, Tulsa County, Northern District**<br>**of Oklahoma** | Case No. _____<br><br>**FILED UNDER SEAL** |

### Affidavit in Support of an Application
### Under Rule 41 for a Warrant to Search and Seize

I, Alan Frank, Special Agent with the Drug Enforcement Administration (DEA),

being duly sworn, do depose and state that:

1. I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant authorizing the search of a residence

located at 1510 East 67th Street, in the City of Tulsa, Tulsa County Oklahoma,

Northern District of Oklahoma, including the out-buildings and vehicles on the

curtilage premises.  This residence is located in the Northern District of Oklahoma

and is further described in Attachment "A" for the things described in Attachment

"B."

2. 2. I am a federal law enforcement officer as defined under Rule 41(a)(2)(C)

and am authorized to request this search warrant because I am a government agent

who is engaged in enforcing federal criminal laws and I am within the category of

officers authorized by the Attorney General to request such a warrant.

3. I am a Special Agent with Drug Enforcement Administration, United States

Department of Justice, and as such, I am an investigative or law enforcement officer

within the meaning of Title 18, United States Code, Section 2510(7), and Title 21, United States Code, Section 878(a), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Titles 18 and 21 of the United States Code. I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice. I have been a DEA Special Agent since May 2021. I am currently assigned to the Tulsa Resident Office (TRO), in Tulsa, Oklahoma, and I am an "investigative or law enforcement officer" of the United States as defined in Title 21 U.S.C § 878(a). I was previously employed with the St. Louis County Police Department. I worked for St. Louis County Police Department for approximately 6 years, and during that time I was assigned to a Federal Bureau of Investigation (FBI) Violent Gang Safe Streets Task Force as a Special Federal Officer (SFO), where I investigated drug and weapons violation under United States Title 18 and Title 21. I have received numerous hours in specialized training from various federal and local law enforcement agencies. This training has focused upon methods of unlawful manufacturing of illegal narcotics via clandestine laboratories, the installation and monitoring of global positioning satellite (GPS) trackers, Title III wire interceptions, smuggling and distribution techniques, methods of drug trafficking, as well as the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking, the use of assets to facilitate unlawful drug trafficking activity and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations. I have gained a

considerable amount of knowledge about drug trafficking organizations and their

members through my training and experience. During the course of my training and

interviews with various defendants I have learned how individuals involved in drug

distribution schemes maintain records and conspire to deceive law enforcement as

well as rival distributors of controlled dangerous substances. I have learned how

individuals who are involved in the distribution of controlled dangerous substances

maintain records and secret monies derived from the sale of illegal drugs. I have

learned of the distribution schemes utilized by individuals involved in Drug

Trafficking Organizations (DTOs).

4.  I am familiar with the facts and circumstances of this investigation. The facts

set forth in this affidavit are based on my personal observations, knowledge obtained

from other law enforcement officers, my review of documents related to this

investigation, conversations with others that who have personal knowledge of the

events and circumstances described herein, and a review of open-source information

including information available on the internet. Because this affidavit is submitted

for the limited purpose of establishing probable cause in support of the application

for a search warrant, it does not set forth each and every fact I or others have learned

during the course of this investigation.

5.  Based on my training, experience, and the facts set forth in this affidavit, there

is probable cause to believe that evidence of violations of Title 21, United States

Code, Sections 846 (Drug Conspiracy) and 841(a) (Possession with Intent to

Distribute Fentanyl) will be located at 1510 East 67th Street in the City of Tulsa,

3

Tulsa County Oklahoma, Northern District of Oklahoma, including outbuildings

and vehicles on the curtilage premises as further described in Attachment A.

**Jurisdiction**

6.  "A warrant may be issued to search for and seize any property that constitutes

evidence of a criminal offense in violation of the laws of the United States." 18

U.S.C. § 3103a.

7.  The requested search is related to the following violations of federal law:

Title 21, United States Code, Sections 846 (Drug Conspiracy) and 841(a) (Possession
with Intent to Distribute Fentanyl).

8.  Venue is proper because the person or property described in this affidavit is

located within the Northern District of Oklahoma. Fed. R. Crim. P. 41(b)(1).

9.  During the course of my training and experience, I have learned how

individuals involved in drug distribution schemes maintain records and conspire to

deceive law enforcement as well as rival distributors of controlled dangerous

substances. I have learned how individuals who are involved in the distribution of

controlled dangerous substances maintain records and secret monies derived from

the sale of illegal drugs.

10.  Based on my background, training and experience, as previously detailed in

this affidavit, I know:

>   a. Drug traffickers often place assets in names other than their own to avoid
>
>   detection of these assets by law enforcement. In addition, drug traffickers
>
>   often use a variety of vehicles, vehicles in the names of others and rental

4

vehicles to prevent detection and identification by law enforcement and to prevent forfeiture of the vehicles;

b. Even though these assets are in the names of other people, the drug traffickers continue to use these assets and exercise dominion and control over them;

c. Drug traffickers must maintain a large amount of U.S. currency in order to finance their ongoing drug activities;

d. Drug traffickers maintain books, computer data and programs, records, receipts, notes, ledgers, airline tickets, money orders, cashier's checks, records of wire transfers, records of purchase of vehicles and property and other papers relating to the importation, ordering, sale, transportation, possession, purchase and transfer of controlled substances;

e. Drug traffickers often keep records that are usually recorded in units of weight and monetary value, associated with pounds and kilograms or other such units of measurement and dollar amounts to assist them in their business, records to keep track of amounts "fronted" to customers and money owed by customers for amounts "fronted" by the trafficker; the aforementioned records, books, notes, ledgers, etc., are maintained where drug traffickers have ready access to them, i.e., on their persons, in their vehicles, in or about their residences and places of business. These documents are often kept in code to secret their meaning from law enforcement;

f. It is common for drug traffickers to hide contraband, proceeds of drug sales, financial instruments, precious metals, jewelry and other items of value, and/or proceeds of drug transactions, records and evidence of drug transactions relating to transferring, hiding or spending large sums of money made from engaging in drug trafficking in secure locations on their persons, within their vehicles, within or around their residences and businesses for ready access or to conceal them from law enforcement authorities;

g. When drug traffickers collect proceeds from the sale of drugs, they attempt to legitimize these profits. To accomplish these goals, drug traffickers utilize some, if not all, of the following means; foreign and domestic banks and their attendant services, securities, cashier's checks, money orders, bank drafts, letters of credit, real estate, shell corporations and business frauds;

h. Drug traffickers commonly maintain names, addresses and telephone numbers in books or papers for their associates in the trafficking organization. These books or papers include such items as address books, telephone messages, etc. Shorthand and/or code names are sometimes used for buyers, co-conspirators, sellers, weights and other details of the drug traffickers;

i. Drug traffickers hide and maintain in their residences, storage buildings, barns and outbuildings, places of business, family member's residences and

6

the residences of co-conspirators, financial records which, when analyzed, will show their accumulation and expenditure of money and assets substantially exceeds any legitimate income. I am aware that the courts have recognized that unexplained wealth is derived from crimes motivated by greed, in particular, drug trafficking;

j. The books, records, receipts, notes, ledgers and other items mentioned above, are commonly maintained where the drug traffickers have ready access to them and are maintained for long periods of time after the actual event reflected in the documents;

k. Drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their products. These traffickers usually maintain these photographs in their possession, as in their cellular telephones, iPads, or other portable electronic devices;

l. Drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing drugs. This paraphernalia includes, but is not limited to, scales, plastic bags, cutting agents, and other devices used for packaging to aid in the concealment of the drug for its distribution;

m. Drug traffickers often keep hand guns, ammunition and other weapons in their residences (including outbuildings), businesses and automobiles to safeguard supplies of drugs and the proceeds of drug sales;

n. Drug traffickers frequently package illegal narcotics in vacuum sealed bags. Vacuum sealed bags help mask the smell of illegal narcotics, which assists

drug traffickers with deterring law enforcement detection. Additionally, mid-level distributors frequently repackage the illegal narcotics they receive from their source of supply ("SOS") into smaller quantities.

o. Drug traffickers often operate under assumed names in order to conceal their true identities from law enforcement and, in so doing, acquire property, services and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names, and they maintain such documents in evidence of their false identities in their residences (including outbuildings), businesses and automobiles together with evidence of their true identities;

p. Drug traffickers commonly conduct a significant amount of their business by using cellular telephones and other telephone systems and normally make frequent calls to conduct, direct, supervise and coordinate their activities;

q. Drug traffickers commonly keep their stash of controlled substances and currency proceeds separate and store the same in multiple residences (including outbuildings), businesses and automobiles; and

r. Individuals involved in illegal activities like drug trafficking often generate large amounts of cash from their illegal activities. In order to conceal profits from illegal activities, these individuals employ various types of financial transactions to disguise and conceal profits. Individuals involved in criminal activities may utilize the facade of a legal enterprise that can be

8

represented as the source of funds arising out of the criminal activity. Individuals involved in illegal activity often physically conceal their funds in locations such as residences, safe deposit boxes, safes or other locations where assets can be physically concealed. Illegal proceeds or assets may also be hidden by placing the assets in third party names including personal property, real property or financial institutions.

s. Persons engaged in drug trafficking often carry and possess firearms during and in relation to and in furtherance of their crimes. They also photograph themselves and others with controlled substances, firearms, and money proceeds. Such photographs are often kept in digital form on cell phones. Individuals involved in drug trafficking also trade images of firearms and/or other items used in or derived from their illegal activity on their cell phones;

t. Those involved in domestic or international drug trafficking rely heavily on telephones to communicate with one another in order to coordinate the smuggling, transportation, and distribution of illegal drugs, and they frequently employ coded language and slang terminology in an effort to maintain secrecy while engaging in such communications;

11. Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers, I know that computer data can be stored on a variety of systems and storage devices including, but not limited to, hard disk drives, floppy disks, thumb drives, compact disks, magnetic tapes, memory chips, cellular telephones, iPads and other portable

electronic devices. I also know that during the search of the premises it is not always possible to search computer equipment and storage devices for data for a number of reasons, including the following:

a. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application or operating system that is being searched.

b. Searching computer systems requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover "hidden," erased, compressed, encrypted or password-protected data. Computer hardware and storage devices may contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Since computer data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential to conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

c.  Because of these facts, it is often necessary for computers, cellular

telephones, iPads and other portable electronic devices and all related

computer equipment to be seized during a premises search in order to

conduct a search by Forensic Examiners in the well-equipped and

controlled environment of a laboratory setting. If any electronic storage

device is seized during the search of the premises described in Attachment

A, a separate warrant will be sought before searching those storage devices

for data.

## Probable Cause

12. The DEA is currently conducting an investigation targeting Aaron Wilkie

Murphy and known associates. Paragraphs 14-27 of this affidavit provides

background information regarding the investigation. Paragraphs 28-39 provide the

most recent probable cause information beginning in November 2023. MURPHY is

a suspected member of a drug trafficking organization that imports fentanyl and

crystal methamphetamine from Mexico and distributes these drugs throughout the

United States to include the Northern District of Oklahoma.

13. In August of 2021 your affiant received information from DEA TFO Randy

Mackenzie concerning Murphy and his involvement with the distribution of illegal

drugs. TFO Mackenzie provided me with verbal information from a confidential

source (CS-1), stating Murphy is transporting and selling fentanyl and crystal

methamphetamine in and around the city limits of Tulsa, Oklahoma.

14. TFO Mackenzie notified me that Murphy lives with his mother in Inola,

11

Oklahoma, located at 31474 South 4160 Road and works at Macy's Distribution Center in Owasso, Oklahoma. TFO Mackenzie stated Murphy is on federal supervised release and currently wears an ankle monitor. TFO Mackenzie stated Murphy drives a blue Ford F-150, State of Oklahoma rear registration plate CN514461.

15. In September of 2021, your affiant and DEA Special Agent Darren Glanz drove to the listed residence of Murphy, 31474 South 4160 Road- Inola, Oklahoma 74036. We witnessed four separate vehicles parked in the driveway, to include a blue Ford F-150 bearing State of Oklahoma rear registration plate CN514461.

16. In December of 2021, DEA TFO Drew Sharp and your affiant spoke with a Tulsa Police Department (TPD) Confidential Source (CS-2) in regards to Murphy. The CS has known Murphy for an undisclosed period of time. CS-2 had knowledge of Murphy being involved with the distribution of crystal methamphetamine in the area around Tulsa, Oklahoma. CS-2 told TFO Sharp and your affiant that he/she and has purchased crystal methamphetamine from Murphy on more than one occasion. CS-2 told TFO Sharp and TFO Hamilton that he/she would be able to participate in a controlled purchase of crystal methamphetamine from Murphy. CS-2 said the price would be about $900.00 for approximately 1/4 pound.

17. In January of 2022, your affiant, TFO Sharp, and Special Agent Glanz met with CS-2, in reference to purchasing 1/4 pound of crystal methamphetamine from Murphy for a pre-arranged price of $900.00. On the same date, CS-2 contacted Murphy and agreed to meet in the parking lot of PetSmart located at 10117 East 71st

Street, Tulsa, Oklahoma 74133, for a drug transaction. CS-2 drove to neutral

location and parked in the parking lot. CS-2 was searched for contraband and money

prior to participation in this operation. Moments after parking, CS-2 contacted

Murphy, via cellular telephone, advising he/she was at PetSmart. At approximately

2:38 PM, your affiant observed a dark green in color Pontiac Grand Prix bearing OK

Tag EOM844 pull into the parking lot of PetSmart. The Pontiac parked near CS-2's

vehicle. TFO Hamilton observed CS-2 get out CS-2's vehicle, walk to the Pontiac

and get into the rear passenger seat. The Pontiac was occupied by white male driver

and a white female front passenger. The driver of the Pontiac Grand Prix was

identified by surveillance as Murphy. CS-2 got out of the back passenger seat of the

Pontiac Grand Prix and returned to CS-2's vehicle. Moments later CS-2 met with

your affiant, TFO Sharp, and Special Agent Glanz. CS-2 handed me a large clear

plastic bag of containing crystal methamphetamine. TFO Sharp performed a field

test on the crystalline substance which resulted in a positive field test for the presence

of methamphetamine. The clear plastic bag contained approximately 258 gross

grams of crystal methamphetamine. The methamphetamine was later lab tested and

was confirmed to be legitimate.

18. In February of 2022, employing tracker data being employed in this

investigation, your affiant and TFO Sharp drove to the SecurCare Self Storage,

located at 12323 East Skelly Drive, Tulsa, Oklahoma 74136. With a U.S.

Department of Justice/Drug Enforcement Administration Subpoena for the rent

roster. Your affiant and TFO Sharp made contact with the employee of SecurCare

Self Storage, requesting a list of the individual storage building renters. The employee provided TFO Hamilton and TFO Sharp a printed current list of the storage building renters. The printed list established Murphy was the renter of storage buildings unit #002 and #360 and Murphy rented the storage building units on February 7, 2022.

19. In March of 2022, your affiant and DEA Special Agent Alan Frank drove to the Best Western Plus Woodland Hills Hotel and Suites located at 10143 East 62nd Street South- Tulsa, Oklahoma, 74133. TFO Hamilton and SA Frank saw the dark green 2004 Pontiac Grand Prix with Oklahoma license plate- EOM844 parked in the parking lot, stationary on the east side of the hotel.

20. In March of 2022, your affiant acquired a "U.S. Department of Justice/Drug Enforcement Administration Subpoena" for the hotel rent roster. March 10, 2022, your affiant and Special Agent Frank returned to the Best Western Plus Woodland Hills Hotel and Suites with the subpoena. Your affiant and Special Agent Frank made contact with hotel staff, providing the subpoena. Your affiant and Special Agent Frank learned Murphy checked into the hotel and was currently renting room #224.

21. In March of 2022, Murphy was observed by DEA agents walking in the parking lot of the Best Western Plus Woodland Hills Hotel. Murphy was observed entering the same dark green Pontiac Grand Prix, on the driver's side. As Murphy exited the parking lot of the hotel, Tulsa Police Department patrol units attempted to conduct a traffic stop on the Pontiac. Murphy fled the scene at a high rate of speed.

14

The vehicle pursuit of Murphy was terminated by the Tulsa Police Department and Murphy has not been seen or apprehended since.

22. The same day, the DEA and Tulsa Police department served a State of Oklahoma search warrant at Best Western Plus Woodland Hills Hotel and Suites-room #224 located at 10143 East 62nd Street South in Tulsa, Oklahoma. Hotel room #224 was unoccupied. Seized items included: approximately 2,350 gross grams of crystal methamphetamine, approximately 2,100 gross grams of fentanyl, approximately $70,119.00 in US Currency, a "Brick Press" containing fentanyl residue, a "Cassida" brand money counter, miscellaneous items of drug paraphernalia, drug ledgers, ignition keys to luxury vehicles and a motorcycle, along with the titles to the luxury vehicles. The methamphetamine and fentanyl was later lab tested and was confirmed to be legitimate.

23. DEA agents then executed the State of Oklahoma Search Warrant at the SecurCare Self Storage at 12323 East Skelly Drive, Unit #360, Tulsa, Oklahoma. Storage unit #360 was unoccupied. Seized items included: a stolen 2021 Benelli TNT135 motorcycle, a 2005 Mercedes Benz, and a 2017 Lincoln Continental.

24. Murphy is believed to be residing in Mexico and is still currently involved in the distribution of illegal drugs from Mexico to the United States, specifically to the Northern District of Oklahoma.

25. In February of 2023, your affiant and Special Agent Glanz met with DEA TFO Andy Dawson regarding newly acquired information regarding Murphy and his co-conspirators. TFO Dawson said he recently interviewed a Tulsa Police

15

Department Confidential Source (CS-3) in regard to Murphy. CS-3 told TFO

Dawson that Murphy currently has approximately 40 kilograms of fentanyl in a

storage facility located in the City of Tulsa. CS-3 told TFO Dawson the name of the

storage facility is Shadow Mountain Storage and its located at 6202 South Sheridan,

Tulsa, Oklahoma 74133. CS-3 told TFO Dawson that Murphy has three separate

drug runners (drug couriers), to include Serina Kaityln Vacin (suspected girlfriend of

Murphy). Continuing the interview, CS-3 provided telephone numbers for two of the

drug couriers, to include the telephone number for Vacin of 918-416-4082. CS-3 also

told TFO Dawson that the drug couriers have keys to the storage units, located at the

Shadow Mountain Storage business.

26. Subsequently during this investigation members of the TRO identified Hong

Thao Nguyen a/k/a Thao Murphy. Through this investigation members of the TRO

have identified Hong Nguyen to be the mother of Aaron Murphy's child, and

believed to be a cell head for the Murphy DTO in Tulsa, Oklahoma.

27. In March of 2023, the Tulsa Police Department's Special Investigations

Division's Crime Gun Unit (CGU), began investigating a drug trafficking

organization (DTO) after multiple informants notified investigators that Serina Vacin

and Hong Thao Murphy AKA Hong Thao Nguyen are actively selling trafficking

amounts of fentanyl and methamphetamine within Tulsa County. The drug

trafficking organization based in Tulsa, OK, is believed to be led by Aaron Murphy,

who is currently on the run for an active federal felony warrant from a previous Drug

Enforcement Administration (DEA) case. This drug trafficking organization uses a

16

complex system to effectively deliver large amounts of illegal narcotics while trying to avoid detection by law enforcement.

28. In March of 2023, Officer Kennedy, of the Special Investigations Division Crime Gun Unit was contacted by a reliable confidential source, henceforth referred to as the CS-4[1]. CS-4 told Officer Kennedy that Aaron Murphy is running a drug trafficking organization in Tulsa, while he resides in Mexico. Your affiant states that he is familiar with Aaron Murphy and that he is known to be a drug trafficker by law enforcement. Your affiant states that Aaron Murphy has a full extradition warrant from the U.S. Marshalls for methamphetamine possession.

29. CS-4 stated that Vacin and Nguyen facilitate Murphy's drug operation in Tulsa. CS-4 identified 3220 South Knoxville Avenue apartment 14 as Vacin's address. CS-4 stated that Vacin uses her phone to facilitate drug transactions. CS-4 stated that Vacin drives an Audi. CS-4 stated that within the last 30 days, CS-4 had seen trafficking amounts of Fentanyl inside Vacin's apartment located at 3220 South Knoxville Avenue apartment 14.

30. CS-4 has given Officer Kennedy information concerning the sales and distribution of controlled dangerous substances, and information on individuals illegally possessing firearms in excess of three different occasions. Officer Kennedy states the information CS-4 has provided in the past has led to investigations and arrests of individuals. Officer Kennedy states those investigations have also led to large quantities of dangerous controlled substances as well as several firearms being

---

[1] CS utilized by Tulsa Police Department Crime Gun Unit is deceased

17

seized by law enforcement. CS-4 has shown they have knowledge of how narcotics are trafficked as well as distributed in Tulsa County and CS-4 has shown to have general knowledge of firearms. Officer Kennedy states CS-4 has been assisting law enforcement for several months. To the Tulsa Police Departments knowledge, CS-4 has never provided false or misleading information and the information provided in the past has been confirmed during warrant service and/or arrest.

31. Officer Beal of the Tulsa Police Department authored a Cash-App warrant related to Aaron Murphy's DTO. In the Cash-App return Officer Beal discovered a bank routing number that the funds are being funneled to at Lineage Bank in Franklin, Tn. Officer Beal, also an FBI TFO had a subpoena issued for Lineage Bank and discovered the Account Holder Name is "Hong Thao Thi Nguyen". Officer Beal knows this person to be one of Murphy's girlfriends and a drug trafficker in Tulsa, Ok.

32. During the first week of November 2023, a Bureau of Indian Affairs Confidential Source (CS-5) met with TFO Hamilton and Bureau of Indian Affairs (BIA) TFA Shawn Sheridan. CS-5 also provided information in regard to Murphy and Murphy's involvement with the distribution of fentanyl and crystal methamphetamine in the Tulsa, Oklahoma area. During this time period, an arranged drug transaction between CS-5 and Murphy had been attempted, utilizing Murphy's phone number obtained through tolls and CS-5's confirming the number - 1-405-871-8271. Murphy failed to provide CS-5 with a location. The previously arranged drug transaction between CS-5 and Muprhy had been set up to purchase an

ounce of fentanyl for $850.00.

33. During the second week of November 2023, TFA Hamilton and TFA Sheridan met with the CS-5 at the Tulsa DEA Office. TFA Sheridan provided CS-5 with an audio/video recording device. CS-5 was provided with $850.00 for the purchase.

34. TFO Hamilton and TFA Sheridan cleared the CS by searching his/her person and his/her vehicle for illegal contraband and/or US Currency. This action was completed prior to all parties departing the Tulsa DEA Office for an undetermined location.

35. Murphy text CS-5, telling him/her to drive to the Motel 6 on Admiral, in Catoosa, which is located in the Northern District of Oklahoma. Murphy then sent CS-5 a text saying, "how much total cause I want to make sure she doesn't bs"?

36. CS-5 departed the Tulsa DEA RO in his/her vehicle. Your affiant and TFA Sheridan followed behind CS-5 to Motel 6, never losing visual contact.

37. CS-5 received a text message from Murphy, telling him/her to drive to 420 South 185th East Avenue- Tulsa, Oklahoma 74108 and asked CS-5 if Dollar General would be better. CS-5 sent Murphy a text, saying Dollar General would be a better place.

38. CS-5 exited the Motel 6 parking lot and drove east on Admiral to the Dollar General, located at 19296 East Admiral Place B, Catoosa, Oklahoma 74015. CS-5 arrived at Dollar General, parked, and sat stationary.

39. A white female, identified as Serina Vacin, got inside and sat down in the

passenger seat of CS-5's vehicle. Vacin took possession of the US Currency, counted it and handed the CS a plastic baggy of suspected fentanyl.

40. Vacin exited CS-5's vehicle and got inside a dark blue Hyundai Accent vehicle which was parked at a nearby O'Reilly's Auto Parts store. The Hyundai Accent had a Cherokee Nation rear registration plate of AB0-524.

41. Surveillance units followed behind Vacin as she drove the Hyundai Accent. Surveillance unit followed Vacin to 420 South 185th East Avenue- Tulsa, Oklahoma 74108. Vacin parked in the driveway of the residence.

42. Immediately following the fentanyl purchase, surveillance units visually saw short term traffic at the residence. TFO Wilson and TFO Mackenzie both saw multiple people on foot, people driving up and parking, brief interactions and leaving. TFO Wilson and TFO Mackenzie saw obvious drug transactions taking place at 420 South 185th East Avenue- Tulsa, Oklahoma 74108. Investigators observed brief, hand to hand transactions between buyers and sellers that were clearly drug transactions. Surveillance units were able to acquire the rear registration plate from one of the suspected customers. Surveillance units described it as a Ford van- State of Oklahoma rear registration plate- GIG-739.

43. TFO Hamilton and TFA Sheridan met with CS-5. TFO Hamilton and TFA Sheridan took possession of suspected fentanyl and the audio/video recording device from CS-5. TFA Sheridan cleared CS-5 by searching his/her person and his/her vehicle for illegal contraband and/or US Currency. CS-5 was released.

During this brief interaction, CS-5 positively identified the white female as "Serina VACIN". The CS knows Vacin due to several previous encounters with her where drug transactions were completed. Later, the suspected fentanyl was field tested by a member of the DEA Tulsa RO. The 82.3 gross grams of substance field tested positive for fentanyl.

44. On November 16, 2023, United States Magistrate Judge Jodi F. Jayne, Northern District of Oklahoma, signed an application and order for investigators to execute a residential search warrant at 420 South 185th East Avenue, Tulsa, Oklahoma.

45. On November 29, 2023, at approximately 6:00 a.m., members of the TRO executed the aforementioned search warrant. Upon execution members of the TRO arrested Vacin and a Justin Waymire. Upon searching the residence, in a bedroom, investigators located large quantities of methamphetamine, fentanyl, heroin, and fentanyl pills. Investigators also located bulk United States Currency, two handguns, and two rifles.

46. In a post Miranda interview with both subjects they admitted that the aforementioned substances located in the bedroom of the residence belonged to them. Investigators were advised that the substances were obtained by Nyugen. Investigators were provided an address for Nyugen which was 1510 East 67th Street, Tulsa Oklahoma. Investigators were advised Nyugen would obtain kilogram quantities of fentanyl, from Murphy. Nyugen would then provide the fentanyl to local couriers which would distribute the quantities to Tulsa-based customers.

21

Investigators were advised Nyugen would then collect the drug proceeds from the Tulsa-based couriers. Investigators were advised that Nyugen utilizes 1510 East 67th Street, Tulsa, Oklahoma to stash kilogram quantities of fentanyl. Investigators were also advised that Nyugen would also stash bulk US Currency inside the residence. Investigators took Justin Waymire to 1510 East 67th Street, Tulsa, Oklahoma and he identified the residence to belong to Nyugen. Specifically, investigators were advised that Waymire has responded to 1510 East 67th Street approximately 10 times. Each time was to obtain large quantities of fentanyl and/or to drop off bulk U.S. Currency to Nyugen. In the past 72 hours, the cooperating defendants advised they responded to 1510 East 67th Street to obtain approximately a half kilogram of fentanyl. Vacin also identified the residence at 1510 East 67th independently, and that the residence was utilized by Nyugen. Investigators also used the mapping system on a cellular device to positively identify the residence. Since the identification was made by both the cooperating defendants independently, investigators have maintained consistent surveillance of the residence to ensure Nyugen does not depart from the residence, and/or move the bulk US Currency and/or contraband from the residence.

## Conclusion

47. Based on the information above, I submit that there is probable cause to search 1510 East 67th Street in the City of Tulsa, Tulsa County, Northern District of Oklahoma, including outbuildings and vehicles on the curtilage premises as further described in Attachment A, and seize the items described in Attachment B.

48. I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully Submitted,

*Alan Frank*

Alan Frank
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me this _____ day of November, 2023.

Jodi F. Jayne
United States Magistrate Judge

23

## ATTACHMENT "A"

## LOCATION TO BE SEARCHED

The property to be searched is a residence at **1510 East 67th Street, City of Tulsa, Tulsa County, Northern District of Oklahoma** including outbuildings and vehicles on the curtilage premises; The property further described as 1510 East 67th Street, Tulsa, Oklahoma, is located on the southeast corner of East 67th Street, and South Rockford Avenue. The residence is composed of brown rock, off white trim, and a reddish/brown sloped roof. The front door to the residence faces north. The numbers 1510 are located above the garage door, and affixed on the side of the mailbox which is located next to the driveway of the residence. Below is a picture of the residence.



**ATTACHMENT "B"**

**DESCRIPTION OF ITEMS TO BE SEIZED**

1.     Documents showing ownership of real or personal property;

2.     United States Currency or items reflecting drug proceeds;

3.     Books, records, receipts, notes and other papers relating to the trafficking of

narcotics even though these documents may be in code or in a different language other

than English or in electronically stored data.

4.     Contraband, including controlled substances, proceeds of drug sales, records of

drug transactions, drug sources, drug customers, and other tangible items evidencing the

obtaining, secreting, transfer and/or concealment of assets and/or money obtained

through or used in the transportation, distribution, and sale of narcotics, including but not

limited to drug or money ledgers, buyers lists, seller lists, recording of sales and any

corresponding records of account receivable, money paid or received, drugs supplied or

received, cash received to be paid for controlled substances or intended to be paid for

controlled substances, whether in paper form or electronically stored data on computer

discs, cellular telephones, or other storage media;

5.     Items of personal property tending to establish the existence of a narcotics

conspiracy including but not limited to personal telephone bills, photographs and

documents and other items reflecting names, addresses, telephone numbers, and

communications;

6.     Paraphernalia for distributing, packaging and weighing narcotics. Equipment and

materials used in the building or using concealed compartments;

7.   Articles of personal property tending to establish the ownership of the property in question, including telephone, rent receipts, keys, utility company receipts, papers, documents, letters and cancelled mail envelopes;

8.   Records of mail and communication services for cellular telephones and other communication devices which evidence the participation in a conspiracy to distribute narcotics;

9.   Records and items reflecting travel for the purpose of participation in drug trafficking including passports, airline tickets, vehicle rental receipts, credit card receipts, hotel and restaurant receipts, cancelled checks, maps and records of long distance calls reflecting domestic and foreign travel;

10.   Any and all appointment calendars;

11.   Bank statements, loan applications, money drafts, letters of credit, money orders, cashier's checks, bank checks, safety deposit box keys, vault keys, safes, any and all documents relating to banking activities and other financial transactions including the purchase of real estate and documents showing ownership of real estate;

12.   Records relating to employment, wages earned and paid and other compensation records. Records relating to local, state and federal personal and business income, sales and service taxes, including but not limited to, computations, notes and records used for tax purposes;

13.   Evidence of proceeds including items relating to maintaining, secreting, gathering or liquidating drug proceeds, particularly: financial records of withdrawals,

2

funds of transfers, purchases, sales, transfers of assets or consolidation of assets. Liquid assets or evidence of them including currency, bank statements, money drafts, letters of credit, money orders, cashier's checks, pass books, precious metals and jewelry, and documents relating to safe deposit boxes, stocks, bonds and other financial instruments;

14. Evidence of the expenditure of money for the purchase of vehicles or evidence establishing an ownership interest in vehicles, including certificates of title, vehicle tag records, photographs and receipts of vehicle transactions;

15. Evidence contained within vehicles on the curtilage of the property to be searched;

16. Cellular telephones including electronically stored data on said telephones or other electronic storage devices such as PDA's or electronic organizers;

17. Cellular telephones;

18. Electronic memory chips or storage chips or SIM cards used in cellular telephones and the data and information stored thereon. Computers and data storage devices including discs, drives, CD's and DVD's and the electronically stored data thereon. The electronically kept information or data stored on electronic storage devices, computers or PDA's whether in files or disc, drives, in memory storage devices, in the drives or other electronic storage medium. E-mail, text messages or other notes or records whether financial or otherwise, accessible by computer or other communication services stored in files on hard drives, drives, CD, DVD, in the drives, or other electronic storage medium or device. These items will merely be seized if found, and will not be searched without obtaining another search warrant for the data therein.

3

19.   Firearms, ammunition and articles associated with the possession, ownership and use of firearms including, boxes, receipts, holsters, clips, and equipment.